Reed, J.,
delivered the opinion of the court.
Appellants prosecute this appeal, alleging as error the failure of the court to decree a greater or further interest in the property or proceeds. The assignment is as follows : “ The court erred in not requiring the appellee to sell said real estate and to pay to the#appellants a proportion of the . profits derived from the sale of said real estate ; ” and “ the court erred in not decreeing that the appellee should account for one half of the profits on the real estate mentioned in said decree.” No other errors are claimed or urged in argument. By the decision upon the demurrer to the original *368 complaint, it was held that the suit could not be maintained, and the relief asked — a decree of sale and an accounting— granted, and plaintiffs were required to so amend the prayer for relief as to ask for partition. No error is assigned upon such finding. An amended complaint was filed and relief prayed in the alternative: 1st. If practicable, partition. 2d. If found impracticable, a sale and accounting, — in effect, in the second, asking the same relief as in the original complaint, after having acquiesced in and adopted the decision on demurrer, and the relief asked further complicated by the following prayer: “ And the plaintiffs further pray that in the event of a partition of said premises that that portion of said real estate set off to the defendant, Miers Fisher, may be sold, in case any property shall be sold, before the selling of that portion of said real estate that may be allotted to the plaintiffs herein.”
Partition was found practicable, and the land partitioned under the decree, and although, as stated, the relief asked was in the ■ alternative, the complaint now is that plaintiffs did not get both. It will readily be seen that the two were incompatible.
The memorandum in writing is an acknowledgment in writing that plaintiffs’ assignor had contributed $409.20 to the purchase, and had interest in the real estate pro tanto. The second is a promise to pay one half the profits, after the sale of the entire property, from the proceeds. No sale was made, plaintiffs elect to partition, and by obtaining partition render the contingencjq upon which profits were to accrue, impossible. The court was powerless, after partition, to order the sale of either parcel severed from the other, or both together, an(| without the sale of the entire property there could be no profits for division. Having.elected to take their proportionate share of the property, with its enhanced value, plaintiffs waived all right to insist upon the division of profits, which could only result from a sale which had never been made. Counsel proceed upon the theory that the clause in the memorandum providing for a division of profits was a *369 further grant of some interest in the estate of appellee, that could be decreed upon the neglect or failure of appellee to sell the property. This is a mistaken view. No interest in the realty was granted or could be predicated upon it. It was simply a promise to account for and pay over a share of the proceeds after a sale had been consummated and profits realized, and as no sale had been made, no action or suit could be maintained upon the promise. There was no cause of action at law or in equity.
. Leaving out of consideration the testimony of appellee, which clearly establishes the relation and intentions of the parties, the same facts stated by him are fairly inferable from the memorandum and circumstances : 1st. That the property was bought on speculation. 2d. That the sale and resulting profits were to result from the services of Loper, who was a broker or operator in real estate.
The fact that Loper contributed only one eleventh of the purchase, and hr case of sale was to receive one half of the profits, is conclusive of the fact that the expected profits were to compensate him for services in selling. If such were not the fact, he and his assignees were, by their joint ownership, under equal obligation with appellee to effect a sale. Within a month or two Loper traded his interest for a piano, and ceased all efforts and connection with it. For about nine years the plaintiffs and their assignors were the owners of the Loper interest; made no effort to sell, and left appellee to protect their title and property, which he did by paying all the taxes for the entire time.
During the entire period the property was owned in common, it is not claimed or shown that any bona fide offer of purchase was made or that the property could have been sold at a profit. It is true, G. W. Bailey testified that about the middle of May, 1890, L. W. Waterbury (father of plaintiff) called upon him and wished him to see appellee and ascertain what he would take for the property, saying he was willing to pay $15,000. On cross-examination in regard to the supposed offer, it was modified by saying: “ I thought *370 that (the offer) was implied in it,” but he was not authorized to enter into any contract for the purchase. This, on its face, looks more like a scheme to establish a basis for damages than a bona fide offer to purchase. Considering the circumstances and conduct of appellants, it would seem that they got by the decree and partition all they were equitably entitled to. Whether this be so or not, they got all they could legally get on the complaint, other pleadings and evidence, and the court did not err in refusing profits.
Cross errors were filed by appellee. We cannot adopt the contention of counsel that the amended complaint stated a new and different cause of action from the original. The cause of action stated in both, as conceded by the pleadings, was the same, growing out of the same transaction, and witnessed by the same memorandum in writing, the bill upon its face and in its allegations showing the plaintiffs to have a limited interest in the property. The trouble arose from the nature of the relief asked. In the first it was asked that the defendant, Fisher, be decreed to sell the entire property, and out of the proceeds pay plaintiffs $409.20, and one half of the profits realized upon the transaction over and above expenses ; the bill as filed and the relief asked making it in the nature of a suit for the specific performance of a contract. To this complaint a general demurrer was filed “ that said complaint does not state facts sufficient to constitute a cause of action.” The demurrer was sustained and leave given to. file an amended complaint, “ so as to justify a decree of partition herein.”
' The amended complaint was filed, containing the same facts as the cause of action, but asking different relief, a decree for partition of the real property, etc. To this the same general demurrer was filed and overruled, showing that the demurrer was sustained, not to the cause of action as stated, but to the relief asked, holding, in effect, upon a general demurrer, that plaintiffs were not entitled to the relief asked, but by their bill had shown themselves entitled to *371 other relief, viz., a partition. There was at the close the general prayer for relief.
Even under the old formal chancery practice, where the party did not show himself entitled to the. specific relief prayed, the general prayer for relief was frequently sufScient to warrant the court in decreeing such relief as the party had shown‘himself entitled to, disregarding the prayer for special relief. 1 Dan. Ch., 382 and 383; Mitf. Eq. Pl., by Jeremy, 38 and 45; Cooper Eq. Pl., 13, 14; Hartley v. Russell, 2 Simons & Stu. 258.
That a demurrer will not lie to the whole bill on account of the specific prayer, see Whitbeck v. Edgar, 2 Barb. Ch. Rep. 106. Under our present code, the form of the prayer seems to be immaterial. See secs. 54 and 150, Civil Code; Kayser v. Maugham, 8 Colo. 232.
In Bliss on Code Pleadings, sec. 161, it is said: “ If the facts put in issue and established by the evidence entitle the party to any relief in the power of the court to give, although not that demanded, it is the duty of the court to give it, and its power to do so is not conditioned on the form of the prayer.”
The cause of action remained the same in both cases. Consequently the amended complaint was not open to the charge of stating a new cause of action. Nor do we think the court erred in overruling the general demurrer to the amended complaint. The facts as stated showed a right to relief, in some way, for the amount of money invested in the property by Loper, and acknowledged by the defendant’s written memorandum. Nor can we adopt the contention of counsel that no recovery could be had by reason of the statute of frauds. It is a matter of no importance whether the parties were tenants in common of the property or partners handling the property for speculative purposes. The memorandum executed by the party to be charged describes the property, admits the receipt of the money as part of the purchase price, declares the trust and the taking of the title. It is true it does not state the cost of the property, nor the pro *372 portion the amount paid bore to the whole purchase price, but it did state the amount for which he was chargeable. The memorandum made the transaction an'express trust. Without the memorandum the law would have made it a resulting trust, that could have been established by parol. See Knox v. McFarran, 4 Colo. 597; Learned v. Tritch, 6 Colo. 440; Lipscomb v. Nichols, 6 Colo. 292; Kayser v. Maugham, 8 Colo. 238; Meagher v. Reed, 14 Colo. 335.
We think the memorandum sufficient to establish the trust under the statute of frauds, and that the party seeking to enforce it, with the written memorandum, should not, by reason of the statute, be placed in a worse position than if there had been no written acknowledgment.
The object of the statute was to prevent frauds, not to allow a party to perpetrate them, shielded by the statute. See Wood on Stat. of Frauds, sec. 445; Haigh v. Kaye, L. R. 7 Ch. 469; Lincoln v. Wright, 4 De G. & J. 16; Davies v. Otty, 35 Beav. 208.
As was clearly said by Lord Alvanley in Denton v. Davies, 18 Yes. 503: “It is not required by statute that a trust should be created by a writing * * * but that there should be evidence in writing proving that there was such a trust.” Wood on Stat. of Frauds, sec. 447; Smith v. Matthews, 3 De G. F. & J. 151.
Proof of the trust may be made by letters and informal documents, and parol evidence admitted to apply them. Forster v. Hale, 3 Ves. 707; Smith v. Matthews, supra.
Certainly, under the authorities, the writing was sufficient to establish the existence of the trust.
The statutes of limitations pleaded cannot avail. As long as the property remained in common, and neither party was in default, no cause of action arose. As to the other branch, the division of the profits arising, there could be no cause of action until a sale and refusal to account. Nothing in the proof established a cause of action at an earlier date than a year before action brought.
The decree haying been only for the admitted share fro *373 tanto, and there having been no default claimed or established, it is hard to see by what equitable right appellee seeks to retain it without compensation. We think substantial justice was done to both parties, and that the decree should not be disturbed.

Affirmed.